```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 12-1056(DSD/JJG)
```

State Farm Mutual Automobile
Insurance Company, an Illinois
corporation, and State Farm Fire
and Casualty Company, an Illinois
corporation,

        Plaintiffs,

v.                                       **ORDER**

Mobile Diagnostic Imagine, Inc.,
a Minnesota limited liability
company and Michael Appleman,
individually,

        Defendants.

    William L. Moran, Esq. and Murnane Brandt, PA, 30 East
    Seventh Street, Suite 3200, St. Paul, MN 55101, counsel
    for plaintiffs.

    Eric C. Tostrud, Esq. and Lockridge, Grindal & Nauen,
    PLLP, 100 Washington Avenue South, Suite 2200,
    Minneapolis, MN 55401, counsel for defendants.

This matter is before the court upon the motions for declaratory judgment and partial summary judgment by plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, State Farm) and the motion for summary judgment by defendants Mobile Diagnostic Imaging, Inc. (MDI) and Michael Appleman (collectively, defendants). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion by defendants.

**BACKGROUND**

This insurance dispute arises out of an arrangement between State Farm and MDI involving magnetic resonance imaging (MRI) scans. State Farm reimburses insureds for medical expenses, including MRI scans, as part of its provision of no-fault benefits. Compl. ¶ 14.

MDI employs technologists who take MRI scans of patients referred by medical providers. MDI then submits the scans and other relevant information to independently-contracted physicians and radiologists who interpret them and produce reports containing their findings. Answer ¶ 11; Pomeranz Dep. 31:12-22. The independent-contractor physicians and radiologists are employed by non-party ProScan Reading Service (ProScan). Pomeranz Dep. 18:14-17. Thereafter, MDI forwards the scans and reports to patients' referring medical providers. Ball Dep. 81:5-9. In order to be reimbursed, MDI submits documentation to State Farm and bills for both the taking and interpretation of scans. Compl. ¶¶ 14, 18. MDI often practices "global billing," which encompasses both the taking and interpretation of scans. See Appleman Dep. 117:2-6.

On April 24, 2012, State Farm notified MDI that State Farm would no longer honor bills submitted by MDI. See Carter Aff. Ex. E, ECF No. 52. State Farm thereafter offered to indemnify policyholders against any claims for unpaid services that MDI might bring against them. See, e.g., id. Ex. G.

On April 27, 2012, State Farm filed suit under the Declaratory Judgment Act, seeking a declaration (1) that MDI's services constitute the practice of medicine in violation of the corporate practice of medicine doctrine (CPMD); (2) that MDI's practice of engaging independent contractors violates the CPMD;[1] (3) that the violations of the CPMD were knowing and intentional and (4) that State Farm is excused from payment of outstanding bills for MDI's services.  State Farm moves for declaratory judgment and partial summary judgment, and defendants move for summary judgment.

## DISCUSSION

**I.   Standard of Review**

The Declaratory Judgment Act, 28 U.S.C. § 2201, grants courts discretion to declare rights.  Twin City Fed. Sav. & Loan Ass'n v. Gelhar, 525 F. Supp. 802, 804 (D. Minn. 1981).  "An action for declaratory relief properly should be entertained where a judgment will serve a useful purpose in clarifying and settling legal relations, and where it will terminate the proceedings and afford relief from uncertainty, insecurity and controversy."   Id.

---

[1]  To the extent that State Farm now argues that MDI's confidential rental agreements with chiropractors also violate the CPMD, such an argument was not pleaded and is not properly before the court.

3

(citation omitted). "Summary judgment is suitable in declaratory judgment actions." Iams Co. v. Falduti, 974 F. Supp. 1263, 1269 (E.D. Mo. 1997) (citations omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a

complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Corporate Practice of Medicine Doctrine**

State Farm seeks a declaratory judgment that MDI violates the CPMD by (1) performing MRI scans and (2) maintaining relationships with independent contractors who interpret the scans. Further, State Farm seeks a declaratory judgment that MDI's violations are knowing and intentional, excusing State Farm from payment of any outstanding bills for services rendered.

Under Minnesota law,[2] the CPMD prohibits the "corporate practice of health care professions." Isles Wellness, Inc. v. Progressive N. Ins. Co., 703 N.W.2d 513, 518 (Minn. 2005) (citation omitted); see also Minn. Stat. § 147.081 (codifying the unlawful practice of medicine). "When adopted by state courts, the general prohibition on corporate employment of licensed health care professionals has been based on a corporation's inability to satisfy the training and licensure requirements set out in state statutes and related public policy considerations." Isles Wellness, 703 N.W.2d at 517 (citations omitted). The CPMD "is [not] limited to medicine and ... appl[ies] to other branches of the healing arts." Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co., 818 F. Supp. 2d 1133, 1140 (D. Minn. 2011) (alterations in

---

[2] The parties do not dispute that Minnesota law applies.

5

original) (citation and internal quotation marks omitted). The CPMD, however, "does not automatically embrace every form of health care or therapy." Isles Wellness, 703 N.W.2d at 522.

### A.  Performing MRI Scans

State Farm first argues that MDI violates the CPMD by performing MRI scans. Specifically, State Farm argues that the provision of MRI services is an indivisible process requiring the involvement of a licensed medical provider at all stages. MDI responds that MRI services involve two distinct steps. Specifically, MDI argues that physically recording an MRI scan is a mechanical activity requiring limited training. MDI argues that the interpretation of MRI scans, by contrast, requires the involvement of licensed physicians or radiologists to interpret the scans and formulate reports of their findings. MDI argues that it may perform the technical component and contract with ProScan to execute the professional component without violating the CPMD.

Minnesota courts have addressed the application of the CPMD to MRI services in several unpublished opinions. See, e.g., W. Nat'l Mut. Ins. Co. v. Stand Up Mid-Am. MRI, Inc., No. A10-566, 2010 WL 4825320 (Minn. Ct. App. Nov. 30, 2010); Stand Up Mid Am. MRI, Inc. v. Allstate Ins. Co., No. A09-1108, 2010 WL 1440199 (Minn. Ct. App. Apr. 13, 2010). The Minnesota Supreme Court, however, has not squarely addressed whether MRI services are divisible or indivisible. Thus, the court "must predict how [the Minnesota

6

Supreme] Court would decide this unresolved issue of state law." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 715 (8th Cir. 2004) (citation omitted).

The parties agree that if the technical and professional components are inseparable, MDI would be in violation of the CPMD because it is well-established that laypersons are not permitted to interpret MRI scans. See Allstate, 2010 WL 1440199, at *1. State Farm, however, points to no precedent suggesting that MRI services are inseparable.[3] In fact, the reasoning of other courts considering similar facts suggests otherwise. See id. at *2 (noting that the trial court found that the "taking of the MRI images [by an MRI service] did not violate the CPMD," but affirming

---

[3] Instead, State Farm relies on the expert affidavit of Dr. Scott Schultz to argue that the technical and professional components of MRI scanning cannot be separated and that MDI is in violation of the CPMD. See Schultz Aff. Ex. B, at 3. MDI objects to consideration of the affidavit insofar as it pertains to a purely legal conclusion: whether MDI's practices violate the CPMD.
"[T]he admissibility of expert testimony in diversity cases is governed by federal law." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted). Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a *fact* in issue.

Fed. R. Evid. 702 (emphasis added). Determination of whether MDI has violated the CPMD is a legal, rather than a factual, matter. See Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co., 743 F. Supp. 2d 1034, 1041, 1044 (D. Minn. 2010). As a result, the court will not consider legal conclusions contained in the affidavit.

on different grounds); see also Spine Imaging MRI, L.L.C. v. Country Cas. Ins. Co., No. 10-480, 2011 WL 379100, at *7 (D. Minn. Feb. 1, 2011) ("[T]he [c]ourt cannot conclude as a matter of law that ... [the] taking of MRI scans itself violates the [CPMD].").

Moreover, Minnesota law contemplates lay ownership of diagnostic-imaging facilities. See Minn. Stat. § 144.565, subdiv. 1(2) (requiring diagnostic-imaging facilities to provide the health commissioner with "the names of all physicians with any financial or economic interest ... and *all other individuals* with a ten percent or greater financial or economic interest in the facility" (emphasis added)). Such a provision indicates that "the Minnesota legislature did not intend to prohibit lay people from owning MRI facilities, potentially including those who employ or independently contract with licensed medical professionals." Spine Imaging MRI, 2011 WL 379100, at *8 n.3 (citation omitted). Thus, Minnesota law — in notable contrast to the laws of states that expressly proscribe lay ownership of diagnostic-imaging facilities — suggests that some aspects of MRI services need not be directly controlled by a licensed physician. See, e.g., N.J. Admin. Code § 13:35-2.6 ("Any diagnostic or screening office offering diagnostic or screening tests for a fee shall ... [b]e solely owned and under the responsibility of one or more physicians ...."). Moreover, contrary to State Farm's argument, the practice of global billing does not demonstrate the inseparability of the technical and

8

professional components, as global billing is regularly used in the industry. See Schultz Aff. Ex. B, at 2; Appleman Aff. ¶ 10, ECF No. 51. As a result, the court concludes that the technical and professional components of MRI scans are separable.

State Farm next argues that, even if the components of MRI scans are separable, MDI violates the CPMD by performing the technical component of MRI scans. In general,

> [a] prohibition on the corporate practice of health care arises not simply because particular health care practitioners are engaged in "healing," but also because the individual practitioners are members of a state licensed profession, must undergo significant training and education, and enjoy independent professional judgment.

Isles Wellness, 703 N.W.2d at 522. Here, MDI technologists are not members of a "state licensed profession." Although MDI technologists register with the American Registry of Radiologic Technologists, such registration is not equivalent to state licensure. See Ball Dep. 7:1-3; see also Isles Wellness, 703 N.W.2d at 522 ("[N]o training or licensure is required by state statute. Thus, much of the underlying rationale of the prohibition on corporate practice is inapplicable."). Second, though MDI technologists are subject to certain educational requirements, the obligations are less substantial than those pertaining to professions subject to the CPMD, such as dentistry and chiropractic care. See Ball Dep. 6:22-7:10; see also, e.g., State v. Bailey Dental Co., 234 N.W. 260, 262 (Iowa 1931); Isles Wellness, 703

9

N.W.2d at 523-24. Indeed, MDI technologists' academic and training backgrounds, accreditation status and continuing education obligations are materially similar to those of physical therapists, whom Minnesota courts have specifically excluded from application of the CPMD. See Isles Wellness, 703 N.W.2d at 522-23.

Further, MDI technologists do not exercise independent professional judgment. MDI technologists specifically stated that they did not use their own discretion in determining which protocols to employ when taking MRI scans. See Ball Dep. 71:19-23; Jankowski Dep. 69:6-7. State Farm has furnished only conclusory statements that MDI technologists exercise independent professional judgment, but such unsupported statements are not sufficient to create a genuine issue of material fact. See, e.g., Schultz Aff. Ex. B, at 2. Given the fact that MDI technologists are not state-licensed, undergo limited training and do not exercise independent professional judgment, the CPMD does not prohibit the execution of the technical component of MRI scans by MDI technologists. As a result, summary judgment for MDI is warranted.

### B.  Maintaining Relationships with Independent Contractors

State Farm next argues that MDI violates the CPMD by maintaining relationships with independent contractors who interpret MRI scans taken by MDI. Specifically, State Farm argues that, by contracting with ProScan to interpret and provide reports relating to the MRI scans, MDI indirectly practices medicine in

violation of the CPMD.  MDI responds that it does not improperly usurp the role of a licensed physician because it communicates findings to medical providers, not to the patients themselves.

"[T]he practice of healing ... includ[es] the diagnosis or analysis of the condition of human health." Granger v. Adson, 250 N.W. 722, 723-24 (Minn. 1933); see also Minn. Stat. § 147.081, subdiv. 3 (prohibiting unlicensed persons from "undertak[ing] to prevent or to diagnose, correct, or treat in any manner or by any means, methods, devices, or instrumentalities, any disease, illness, wound, fracture, infirmity, deformity or defect of any person").  Thus, an unlicensed individual may violate the CPMD where, for the purpose of diagnosis or treatment, he or she directly communicates the findings and advice of a licensed physician to a patient.  See Granger, 250 N.W. at 723 (proscribing arrangement where "the opinion of [a] pathologist [was] passed on by the [layperson] plaintiff" to a patient).

Here, however, MDI does not act in such a capacity.  MDI does not directly relay its scans or ProScan's findings to patients. Rather, MDI transmits its scans and ProScan's reports to referring medical providers, not patients themselves.  See Spine Imaging MRI, 2011 WL 379100, at *8 (distinguishing similar situation from arrangement in Granger and declining to conclude that MRI service's relationships with independent contractors who analyze the MRI images violate the CPMD).  MDI's transmission of scans and ProScan

11

reports to patients' referring medical providers — rather than the patients themselves — does not implicate the same concerns as those presented in Granger.  See 250 N.W. at 723.  As a result, MDI does not violate the CPMD by maintaining relationships with independent contractors who interpret the MRI scans taken by MDI.

### C. Nature of CPMD Violation and Payment Obligations

State Farm also seeks a declaration that MDI knowingly and intentionally violated the CPMD,[4] and that as a result of such a violation, State Farm is excused from payment to MDI for services rendered.  Specifically, State Farm seeks a declaratory judgment that MDI is not entitled to payment of outstanding bills for services rendered to State Farm insureds because (1) no valid and enforceable contract exists between State Farm and MDI[5] and (2) MDI's violations of the CPMD were knowing and intentional.[6]  As

---

[4] State Farm also pleaded a claim against Appleman for knowingly and intentionally violating the CPMD. Compl. ¶ 22. State Farm waived this claim at oral argument. Hr'g Tr. 29:12-15. As a result, Appleman is entitled to summary judgment as to this issue.

[5] The parties do not dispute that no formal contract exists between State Farm and MDI. Thus, the court considers only whether MDI violated the CPMD knowingly and intentionally.

[6] Courts "will not void a contract unless it is established that the corporation's actions show a knowing and intentional failure to abide by state and local law." Isles Wellness, Inc. v. Progressive N. Ins. Co., 725 N.W.2d 90, 95 (Minn. 2006).  Here, because the court does not find any violation — and thus, no knowing and intentional violation — it need not consider the effect of any such violation on State Farm's payment obligations.

already explained, however, MDI did not violate the CPMD. As a result, summary judgment for MDI is warranted on the issue of whether any such violation was knowing and intentional.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motions for declaratory and partial summary judgment [ECF Nos. 41, 43] are denied; and

2. Defendants' motion for summary judgment [ECF No. 45] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 25, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court
